UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT FRENCH,

      Plaintiff,

    v.

GREENPOINT MORTGAGE FUNDING, INC., et al.,

      Defendants.
_____/

No. C 09-5726 PJH

**ORDER GRANTING MOTION TO REMAND AND VACATING HEARING DATE**

Before this court is plaintiff's motion to remand this matter to San Francisco County Superior Court. Having carefully read the parties' papers and considered the relevant legal authority, the court hereby rules as follows.[1]

## BACKGROUND

This action arises out of certain mortgage loan transactions that took place in May 2006, and subsequent events that occurred, between plaintiff Robert French ("French" or "plaintiff") and the following defendants: Greenpoint Mortgage Funding, Inc. ("Greenpoint"); Bank of America Home Loans ("B of A"); Mortgage Electronic Registration Systems, Inc. ("MERS"); GMAC Mortgage ("GMAC"); and Triton Funding, Inc. ("Triton")(collectively "defendants"). See generally Complaint ("Complaint"). The basic allegations appear to be as follows:

---

[1] This court finds the motion appropriate for decision without further oral argument, as permitted by Civil L.R. 7-1(b) and Fed. R. Civ. P. 78. See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 729 (9th Cir. 1991) (holding that the court's consideration of the moving and opposition papers is deemed an adequate substitute for a formal hearing), cert. denied, 503 U.S. 920 (1992). Accordingly, the February 24, 2010 hearing date is VACATED.

Plaintiff is the owner of real property located at 350-B Church St., San Francisco, CA (the "property"). See Complaint, ¶ 5. Plaintiff originally applied for a mortgage loan to be taken in connection with the property on May 1, 2006. Id. at ¶ 14. On May 17, 2006, plaintiff executed a promissory note in the amount of $515,200 with defendant Greenpoint. Id. The same day, plaintiff also executed a home equity line of credit agreement and promissory note in the amount of $128,800. Id.

To secure payment of the principal provided in the primary mortgage note, plaintiff executed a Deed of Trust, listing defendant MERS as beneficiary and the Marin Conveyancing Group as trustee. See Complaint, ¶ 16. This Deed of Trust was recorded on May 23, 2006. Id. To secure payment of the principal provided in the home equity line of credit note, plaintiff executed an Open End Deed of Trust, listing Greenpoint as the beneficiary. Id. This Open End Deed of Trust was also recorded on May 23, 2006. Id.

Plaintiff alleges that, at some point afterwards, both the primary mortgage note and the home equity credit line note were sold, "without recordation of such transfers." Complaint, ¶ 17. As a result, the originally named beneficiaries are no longer the true beneficiaries under both notes. Id. Plaintiff alleges that "defendants are not holders in due course" of either note, "due to fraud in factum and ineffective endorsement." Complaint, ¶ 17.

Plaintiff also alleges that the "security instrument" – without naming the specific security instrument being discussed – was defective from the onset "because a different beneficiary was named on the Deed of Trust than from that on the [principal mortgage promissory note]." According to plaintiff, this means that the principal mortgage note was never secured in favor of the note holder, and the deed of trust was never enforceable by its named beneficiary, "because said beneficiary did not hold the note which it purported to secure." Complaint, ¶ 18.

Plaintiff alleges that defendants "Broker and Lender," in conjunction with the principal mortgage note, made certain TILA disclosures, such as: that the APR was 7.287;

that the finance charge was $855,813.02; and that the amount financed was $510,585.84, with a prepaid finance charge of $4614.16.  See Complaint, ¶ 20.  Plaintiff alleges, however, that the true APR, according to the payment schedule provided, was 7.9227%, and that the true finance charge was $911,631.22.  Id.  Thus, plaintiff alleges that the TILA disclosure understated both the APR and the finance charge.  Plaintiff also alleges that TILA understated the prepaid finance charge by at least $1000.  Id.  In addition, plaintiff was charged two yield spread premiums – in the amounts of $5152 and $483 – to Triton Funding.  Id.  Plaintiff alleges that, but for these representations made by defendants broker and lender, plaintiff would not have taken the mortgage loan.  Id.

On July 16, 2009, plaintiff sent a "Qualified Written Request" to defendant Bank of America Home Loans, in which plaintiff requested an accounting and made demands under state and federal statutory law (e.g., RESPA).  Complaint, ¶ 27.  On August 21, 2009, plaintiff received a return package from Bank of America enclosing "all available loan documents."  Id. at ¶ 28.  Upon plaintiff's review of the documents, plaintiff alleges that he discovered for the first time that Triton Funding, without plaintiff's knowledge or consent, forged plaintiff's signature and fabricated plaintiff's financial information on the loan application that was used to secure the principal loan amount.  Id.

Plaintiff also alleges that both the principal mortgage loan and the equity home loan which initially formed a basis for security interests in the property, were assigned in violation of state statutory law, and as such, both notes "were each rendered as non-negotiable," resulting in the fact that defendants "could not have a lawful security interest in the [property]."  Complaint ¶ 32.

As a result of the foregoing, plaintiff filed the instant action in San Francisco Superior Court on October 9, 2009.  Plaintiff alleges seventeen causes of action against defendants: (1) cancellation of voidable contract (as to MERS); (2) quiet title (all defendants); (3) accounting (Greenpoint, B of A, GMAC); (4) fraud (all defendants); (5) constructive fraud (Triton and Greenpoint); (6) breach of fiduciary duty (defendant "Broker"); (7) tortious

violation of RESPA (all defendants); (8) reformation (Greenpoint, B of A); (9) Broker's breach of duty to disclose (Triton); (10) California consumer legal remedies violation (Greenpoint, Triton, B of A); (11) TILA (Greenpoint and Triton); (12) false advertising and unfair competition (Greenpoint, B of A, Triton); (13) unfair competition (Greenpoint, B of A, Triton); (14) unfair debt collection practices (B of A, GMAC); (15) declaratory relief (all defendants); (16) violation of Cal. Civil Code § 1788.17 (all defendants); (17) violation of Cal. Civil Code § 1572 (all defendants). See generally Complaint.

Defendant GMAC filed a notice of removal on December 4, 2009, invoking federal question jurisdiction on the basis of plaintiff's TILA, RESPA, and Fair Debt Collection Practices Act claims – all of which arise under federal statutes. See generally Notice of Removal. That same day, B of A and Greenpoint filed a notice of joinder.[2]

On December 31, 2009, plaintiff filed a "Notice to Dismiss all Federal Claims," in which plaintiff dismissed the foregoing federal claims from the action. See Docket No. 13.

Plaintiff now seeks to remand the complaint to state court, on grounds that federal question jurisdiction is lacking. Concurrently, defendants have also filed pending motions to dismiss and to strike the complaint.

**DISCUSSION**

A.   Legal Standards

Remand may be ordered for either lack of subject matter jurisdiction or for "any defect in removal procedure." 28 U.S.C. § 1447(c). Generally, there is a strong presumption in favor of remand. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-04 (9th Cir. 1996). The removal statutes are construed restrictively, and doubts about

---

[2] Defendant Triton has not appeared in this action, and it does not appear that Triton has been served with the complaint. Furthermore, notwithstanding the fact that MERS has appeared and seeks to litigate the present action, it does not appear, based on the court's review of the record, that MERS has duly filed a separate notice of joinder, as required by law. See 28 U.S.C. § 1446(b); Hewitt v. City of Stanton, 798 F.2d 1230, 1232 (9th Cir. 1986)(noting general rule that all defendants must join in removal petitions). In view of MERS' participation in the proceedings and the analysis contained herein, however, the court construes the lack of any joinder as a procedural defect that may be and is hereby waived.

removability are resolved in favor of remanding the case to state court. <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941); <u>Guas v. Miles, Inc.</u>, 980 F.2d 564 (9th Cir. 1992).

B.  Motion to Remand

The determinative issue raised by plaintiff's motion is whether federal question jurisdiction exists. Whether a federal question exists depends upon the nature of plaintiff's complaint, and whether plaintiff pleads a claim that "arises under" federal law. An action arises under federal law if federal law either (a) creates the cause of action or (b) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. <u>See Franchise Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 27-28 (1983). In order to constitute a "substantial question" of federal law, a claim that purports to allege a state law claim must necessarily turn on some construction of federal law. <u>See id</u>. Furthermore, a claim supported by alternate state law theories in addition to the federal law theories is not sufficient for federal question jurisdiction, unless federal law is essential to *each* of those theories. <u>See, e.g., Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 810 (1988).

Analyzing plaintiff's complaint here, the first-mentioned basis for federal question jurisdiction – i.e., federal law as an affirmative cause of action – is lacking. While plaintiff did initially allege three causes of action under federal law – the seventh, eleventh and fourteenth causes of action – plaintiff's dismissal of those claims, with leave of court, was effective on January 11, 2010. <u>See</u> Docket Nos. 13, 15. Thus, the only claims that remain as affirmative causes of action in the complaint are all state law claims. <u>See</u> generally Complaint. Defendants protest that the court is required to determine federal question jurisdiction as of the time of the filing of removal, and that a post-removal amendment deleting all federal claims does not affect the federal court's subject matter jurisdiction, notwithstanding the presence of state law claims that remain in the complaint. <u>See Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.</u>, 159 F.3d 1209, 1213 (9th Cir.

1998)("plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based").  Technically, this is correct.  However, although the plaintiff may not compel an *automatic* remand in such cases, defendants ignore that the court nonetheless has discretion to choose whether or not to continue to exercise its jurisdiction.  Critically, moreover, where, as here, the federal claims have dropped out of the lawsuit in its early stages (e.g., pre-dismissal motion stage) and only state law claims remain, it may be an abuse of discretion for the federal district court to retain the case.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction"); Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir. 1981).

All of which suggests that, although removal was – and is – technically proper due to the existence of federal question jurisdiction at the time defendants' removal notice was filed, plaintiff's dismissal of federal claims nonetheless significantly impacts upon the court's exercise of jurisdiction.  In sum, the dismissal of claims that originally gave rise to federal question jurisdiction now turns the continued exercise of the court's jurisdiction into a discretionary, rather than mandatory, matter.  Furthermore, the case law suggests that, in view of the early posturing of this case, the court should actually decline such jurisdiction.

Perhaps in tacit acknowledgment of the foregoing, defendants also assert that federal question jurisdiction here may continue to be grounded, alternatively, in the fact that plaintiff's fundamental right to relief – even if premised under affirmative state law claims – necessarily depends on resolution of a substantial federal question.  In this vein, defendants specifically rely on paragraph 20 of plaintiff's complaint for proof of the fact that the complaint continues to plead a federal question. In paragraph 20, plaintiff alleges: that certain TILA disclosures contained in the Truth in Lending Disclosure statement contained statements that were not, in actuality true, since those statements understated the true and actual values and charges that plaintiff was charged.  See Complaint, ¶ 20.  That paragraph

also makes clear that plaintiff would not have taken the loan in question, but for the TILA representations just listed. Id. According to defendants, these TILA allegations underlie plaintiff's section 17200 claim, as pled in the thirteenth cause of action – and thereby raise a substantial federal question. Plaintiff, while acknowledging the existence of the TILA allegations, states in his opening and reply papers that the brief mention of federal regulations in a complaint cannot give rise to federal question jurisdiction, since the federal regulations are not actually at the heart of plaintiff's 17200 claims.

On balance, the court concludes that the allegations contained within paragraph 20 do not give rise to a substantial federal question. It is true enough that this paragraph alleges certain improper disclosures under TILA. Following dismissal of the TILA claim from the action, however, it seems more than likely that this paragraph is simply a hold-over from the previously pled TILA claim, not meant to be asserted in connection with any other independent state law claims. Even if the TILA allegations intentionally remain in the complaint, however, and are intended as a predicate violation for plaintiff's § 17200 claim, as defendants suggest, these allegations are still insufficient to trigger federal question jurisdiction.

The gist of plaintiff's § 17200 claim is a single conclusory paragraph that states: "defendants' advertising, as alleged above, constitutes unfair competition in violation of Cal. Bus. & Profs. Code § 17200." See Complaint, ¶ 155. Putting aside the overly conclusory and factually unsupported nature of this claim, it is clear that the predicate conduct being alleged under § 17200 is defendants' allegedly false advertising, as pled in the twelfth cause of action alleging violation of Cal. Bus. & Prod. Code § 17500 – *not* defendants' alleged TILA violations. Thus, plaintiff's section 17200 claim is premised on a predicate violation of state law, and paragraph 20 cannot otherwise be viewed as supporting a federal question claim under § 17200, as defendants suggest. See, e.g., Grable & Sons Metal Prods., Inc. v. Darue Engr'g & Mfg., 545 U.S. 308, 314 (2005)(the question in assessing federal question jurisdiction "is, does a state-law claim necessarily raise a stated

7

federal issue, actually disputed and substantial"). The court notes that defendants' argument is premised, according to them, on plaintiff's own admission that paragraph 20 states an unlawful act under § 17200, see Opp. Br. at 6:16-22. However, for purposes of the instant motion, plaintiff's characterization of his complaint in opposition to concurrently filed motions to dismiss, is irrelevant. Rather, it is the characterization properly credited to the complaint itself, as currently pled, that controls.

Even if the court were to reasonably infer that paragraph 20 alleges a TILA violation as the requisite predicate activity under plaintiff's § 17200 claim, such a theory could only be pled as an alternative to plaintiff's existing claim that states, as noted above, that defendants' violation of § 17500 satisfies the predicate conduct under § 17200. But, as plaintiff correctly notes, no "substantial" federal question results when allegations of federal law violations are pled as an *alternative* legal theory upon which to seek relief under state law. See, e.g., Christianson, 486 U.S. at 810.

All of which collectively leads the court to conclude that there is simply no basis for federal question jurisdiction that appears on the face of the complaint. And although defendants therefore urge the court to affirmatively use its discretion to continue to exercise jurisdiction – notwithstanding the present lack of federal question jurisdiction – the court declines the invitation to do so. Even putting aside the legal precedent's admonition against continuing to exercise jurisdiction under circumstances similar to those here, neither of defendants' proffered reasons for continuing to exercise jurisdiction – that plaintiff's conduct suggests manipulation of the rules by forum shopping, and the substantial time and resources already invested by the parties and court on this matter – is persuasive. As to the former, plaintiff correctly notes that Baddie v. Berkeley Farms, Inc., 64 F.3d 487, 490-91 (9th Cir. 1995), considered the same issue under similar circumstances and held that plaintiff's early dismissal of federal claims from a removed case was not unduly manipulative. See Baddie, 64 F.3d at 491 ("[Plaintiffs] dismissed their federal claims and moved for remand with all due speed after removal. There was nothing

manipulative about that straight-forward tactical decision"). And as to the latter, the present action is in its initial stages. The motion to remand was timely filed following defendants' filing of the notice of removal, and the court has considered it in isolation. Thus, while the parties have fully briefed unrelated motions to dismiss and to strike that are also pending, those motions have not engendered substantive work on the part of the court, and on the parties' part, and furthermore may fairly easily be re-submitted in state court, if necessary.

On balance, therefore, the court finds that, to the extent applicable, the factors of judicial economy, convenience, fairness, and comity cut against, rather than for, the court's continued exercise of subject matter jurisdiction over the case.

C. Conclusion

For the foregoing reasons, plaintiff's motion to remand the case is GRANTED. In view of this ruling, the court also declines to consider the merits of the pending motions to dismiss and to strike, and furthermore VACATES the February 24, 2010 pending hearing date in connection with those motions.

**IT IS SO ORDERED.**

Dated: February 19, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge